SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State of New Jersey v. John Tate** (A-46-13) (072754)

**Argued November 10, 2014 -- Decided February 2, 2015**

**ALBIN, J., writing for a unanimous Court.**

In this appeal, the Court determines whether, under Rule 3:9-2, defendant John Tate provided an adequate factual basis supporting his plea of guilty to fourth-degree child abuse.

In 2004, defendant was charged with first-degree aggravated sexual assault, second-degree endangering the welfare of a child, and third-degree aggravated criminal sexual contact for acts he allegedly committed between September and November 1999, while serving as a foster parent to a thirteen-year-old boy. In June 2009, the State offered defendant a plea deal that expired the same day. In exchange for pleading guilty to the downgraded charge of fourth-degree child abuse, N.J.S.A. 9:6-1(d) and 9:6-3, the State agreed to dismiss the remaining charges and recommend a sentence of time served.

During the plea hearing, when eliciting the factual basis in support of defendant's guilty plea, defense counsel asked, "[D]id you curse in [the child's] presence to and in a way that would debauch his morals?" Following defendant's affirmative response, the prosecutor asked, "[Y]ou used off-color language in his presence?" Defendant again responded affirmatively and confirmed that he wanted the court to accept his plea. The court did so, finding that defendant provided an adequate factual basis for the charge and entered a knowing and voluntary plea.

In August 2010, defendant moved to withdraw his guilty plea on the ground that it was not supported by an adequate factual basis. The court denied the motion, following the template set forth in State v. Slater, 198 N.J. 145 (2009), which addresses the circumstances under which a guilty plea may be withdrawn even when supported by an adequate factual basis. The court explained that defendant had admitted that he cursed and used foul language in the child's presence. It sentenced defendant to time served and dismissed the remaining charges.

On appeal, the Appellate Division affirmed. It acknowledged that, although N.J.S.A. 9:6-1(d) requires that use of the "profane" language be "habitual," defendant did not specify the frequency with which he used off-color language. However, the panel determined that habitual use was implied by defendant's unequivocal assertion that he committed child abuse by using language that tended to debauch a child's morals. The panel also implicitly concluded that the use of curse words or off-color language satisfied the statutory requirement of using "profane, indecent or obscene language." The Court granted defendant's petition for certification. 216 N.J. 367 (2013).

**HELD:** The factual basis provided by defendant during the plea colloquy was inadequate to support the guilty plea because it did not satisfy the elements of N.J.S.A. 9:6-1(d).

1. The standard of review of a trial court's denial of a motion to vacate a guilty plea for lack of an adequate factual basis is de novo. This standard is different from the Slater analysis used when a court denies a motion to withdraw a plea that is supported by an adequate factual basis but where the defendant later asserts his innocence. Where, as here, the issue is solely whether an adequate factual basis supports a guilty plea, a Slater analysis is unnecessary. Here, the Court also must construe the meaning of the statutes governing child abuse, as well as Rule 3:9-2. These interpretations are de novo. (pp. 11-13)

2. In accordance with Rule 3:9-2, prior to accepting a guilty plea, a judge must be satisfied that the defendant has given a factual account that makes him guilty of the crime. In other words, a court, in its discretion, shall not accept a guilty plea unless inquiry of the defendant and others establishes a factual basis for the plea. The factual basis must include either an admission or the acknowledgment of facts that meet every essential element of the crime,

1

regardless of how heinous the offense may be. In those limited circumstances where a particular element of an offense may address a fact that is beyond a defendant's knowledge, such as the distance an unlawful narcotics transaction occurred from a school, the prosecutor should make an appropriate representation on the record at the time of the hearing, so that the defendant can acknowledge or dispute it. (pp. 13-16)

3. The Court rejects the State's contention that a court may look to evidence beyond the words spoken at the plea colloquy to establish a factual basis. The case on which the State relies for this proposition, State v. Mitchell, 126 N.J. 565 (1992), is distinguishable from the case here. Notably, Mitchell did not involve a motion to vacate a plea before or shortly after sentencing. Rather, the defendant there challenged the factual basis of his plea over six years after his sentencing in an untimely post-conviction relief proceeding. Although the Mitchell Court stated that an assessment of a plea's factual adequacy may include consideration of surrounding circumstances, this merely served to inform the Court's decision that no fundamental injustice warranted relaxation of the post-conviction relief time limitations. In contrast, where a timely motion or appeal is made to vacate a plea, surrounding circumstances cannot substitute for the failure to elicit an adequate factual basis directly from a defendant. (pp. 16-18)

4. In this case, a factual basis to the guilty plea of child abuse must satisfy the following essential elements, as found in N.J.S.A. 9:6-3 and 9:6-1(d): (1) defendant had custody or control of the thirteen-year old child, a minor; (2) he used profane, indecent, or obscene language in the presence of the minor; and (3) he did so on a habitual basis. That defendant had custody or control of the child is undisputed. Turning to the remaining elements, the language in N.J.S.A. 9:6-1(d) is unchanged from the original 1915 legislation and does not define "profane, indecent or obscene" language or the word "habitual." Thus, the Court ascribes the words their ordinary meaning, looking to the general dictionary definitions of each. The words profane, indecent, and obscene are not susceptible to neat and fixed definitions, and, while the definitions have remained remarkably similar since the enactment of the 1915 legislation, the social taboos regarding the usage of certain words are not the same today. Moreover, curse words and off-color language may fall both in and out of the range of the definitions of profane, indecent, and obscene language. (pp. 18-21)

5. As to whether defendant admitted to or acknowledged uttering profane, indecent, or obscene language in the presence of a minor on a habitual basis, the Court reiterates that these words are susceptible to various interpretations and that reasonable people may have different understandings of their meanings. Here, defendant was never asked precisely what words he used and only generally asserted that he cursed and used off-color language in the child's presence. Curse words and off-color language are often synonymous with profane, indecent, or obscene language, but not always. Without eliciting the actual words and language uttered by defendant, the court could not make an independent determination as to whether the purportedly offending language constituted child abuse. Moreover, even if the Court accepts that use of curse words or off-color language equates with profane, indecent, or obscene language, the plea colloquy failed to elicit whether defendant engaged in the habitual use of such language, a fact which cannot be inferred from the child's three-month cohabitation with defendant. (pp. 22-23)

6. Since the factual basis of defendant's plea does not comport with the requirements of New Jersey's court rules or jurisprudence, the Court need not reach the constitutional issue raised on appeal: Whether N.J.S.A. 9:6-1(d) is so broadly and vaguely worded that it treads on free-speech, due-process, or parental rights. Because the factual basis does not satisfy the elements of N.J.S.A. 9:6-1(d), the Court vacates defendant's plea of guilty to child abuse, and returns defendant to the position where he stood before he entered his plea. (pp. 23-25)

The judgment of the Appellate Division is **REVERSED**, defendant's guilty plea is **VACATED** and his indictment is **REINSTATED**, and the matter is **REMANDED** to the trial court for proceedings consistent with this opinion.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE ALBIN's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

JOHN TATE,

    Defendant-Appellant.

       Argued November 10, 2014 – Decided February 2, 2015

       On certification to the Superior Court, Appellate Division.

       Michael J. Pastacaldi, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney).

       John K. McNamara, Jr., Assistant Prosecutor/Special Deputy Attorney General, argued the cause for respondent (Fredric M. Knapp, Morris County Prosecutor, attorney; John K. McNamara and Erin Smith Wisloff, Assistant Prosecutor/Special Deputy Attorney General, on the briefs).

       CJ Griffin argued the cause for amicus curiae American Civil Liberties Union of New Jersey Foundation (Pashman Stein, attorneys; C.J. Griffin, Edward L. Barocas, Jeanne M. LoCicero, and Alexander R. Shalom, of counsel and on the brief).

    JUSTICE ALBIN delivered the opinion of the Court.

    Rule 3:9-2 and our jurisprudence do not permit a court to accept a guilty plea unless the defendant provides a factual

basis establishing that he is guilty of the offense.  Our longstanding commitment to this approach, above all, is intended to preserve the integrity of the criminal justice process and to safeguard against convicting a potentially innocent person.  Accordingly, a court must reject a guilty plea if a defendant protests his innocence or does not admit to or acknowledge facts that evidence his guilt.

Defendant John Tate pled guilty to the fourth-degree offense of abuse of his foster child, N.J.S.A. 9:6-3, by engaging in "the habitual use . . . in the hearing of [the] child, of profane, indecent or obscene language," N.J.S.A. 9:6-1(d).[1]  The trial court accepted the guilty plea based solely on defendant's admission that he "curse[d]" in the child's presence "in a way that would debauch his morals" and that he used "off-color" language.

The trial court denied defendant's motion to vacate his guilty plea based on an inadequate factual basis, and the Appellate Division affirmed.

We now reverse.  During the brief plea colloquy, defendant was not asked to repeat the offending language or the frequency with which he used the language.  The court did not assess whether defendant's conception of a curse word or off-color

---

[1] Sub-part (d) refers to one of several descriptions of child abuse in N.J.S.A. 9:6-1.

2

language was equivalent to the statutory language prohibited by N.J.S.A. 9:6-1(d). In short, the court could not -- based on the plea colloquy -- determine that defendant admitted to committing the crime of child abuse. Our conclusion that the factual basis was inadequate to support the guilty plea does not require that we reach the constitutional questions that have been raised: whether the statute treads on free-speech rights and whether the statute is so hopelessly vague that a reasonable person would not have notice of the conduct that is proscribed.

Defendant's guilty plea is vacated, his indictment is reinstated, and this matter is remanded to the trial court for further proceedings.

I.

A.

Defendant was charged in a 2004 Morris County indictment with first-degree aggravated sexual assault, N.J.S.A. 2C:14-2a(2)(c); second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4a; and third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3a. Defendant allegedly committed those criminal acts between September and November 1999, when he served as a foster parent to thirteen-year-old R.G., who had been placed in defendant's home. The long and tortuous procedural history of this case is not germane to this appeal. Suffice it to say that defendant filed multiple motions and

3

cycled through a number of attorneys from the time of the indictment in 2004 to the plea proceedings in June 2009.

On June 4, 2009, the State tendered to defendant a plea offer that expired that same day. The State and defendant entered into an agreement, which provided that defendant would plead guilty to the downgraded charge of fourth-degree child abuse. See N.J.S.A. 9:6-1(d); N.J.S.A. 9:6-3.[2] In return for the guilty plea, the State agreed to dismiss the remaining charges in the indictment and recommend a sentence of time served. The State also agreed that no fine would be imposed.

That day, in court and on the record, defense counsel explained the terms of the plea agreement to defendant. Defendant stated that he understood and assented to the agreement. For the purpose of eliciting a factual basis to support the guilty plea to child abuse, the court turned to defense counsel to examine his client:

> [Defense counsel]: Between the dates of September 1st, 1999 and November 30th, 1999, did you reside in the Township of Randolph in this County and this State?
>
> [Defendant]: Yes, I did.
>
> [Defense counsel]: Did you become a foster father to a person known as R.G.?
>
> [Defendant]: Yes, I did.

---

[2] The State amended the indictment's second-degree child-endangerment charge to the child-abuse charge.

4

[Defense counsel]: That person known to you was born on February 10th, 1986 and in the time stated was less than the age of 16. Is that correct, sir?

[Defendant]: That's correct.

[Defense counsel]: Did you at that time while having the duty as a parent for -- for this child, did you curse in his presence to and in a way that would debauch his morals?

[Defendant]: Yes.

At this point, the prosecutor interjected with the following question:

[Prosecutor]: You -- you used off-color language in his presence?

[Defendant]: Yes.

The prosecutor then stated that "the factual allocution is satisfactory to the State." Defense counsel asked defendant: "Do you wish the Court to accept your plea of guilty to this matter?" Defendant responded, "Yes."

The court next questioned defendant: "Do you feel you've had enough time to think about your decision to enter this plea?" Defendant replied, "I would have liked more time, but I understand the circumstances" -- an apparent reference to the fact that the plea offer was only available that day. After some additional questioning, the court expressed its satisfaction that (1) defendant had "given an appropriate factual basis for the amended charge" of child abuse and (2)

5

defendant had entered the guilty plea knowingly and voluntarily.[3]

## B.

Fourteen months later, defendant still had not been sentenced. On August 27, 2010, defendant filed a motion to withdraw his guilty plea on the ground that the plea was not supported by an adequate factual basis. He also sought to withdraw his guilty plea for reasons not pertinent to our resolution of this appeal. On October 25, 2010, the trial court conducted a hearing on the plea-withdrawal motion. In denying that motion, the court followed the template set forth in State v. Slater, 198 N.J. 145 (2009), which addresses whether a defendant may withdraw a guilty plea even when it is supported by an adequate factual basis.

With respect to the crimes charged in the indictment, the court observed that defendant "sat in jail for a number of years" and "maintained his innocence," rejecting "favorable plea offers to time served." Indeed, defendant had been incarcerated for more than three years before he was released on bail on May 20, 2008. According to the court, defendant only accepted "responsibility" when he was "offered an opportunity to provide a factual basis" to cursing in R.G.'s presence. The court found

---

[3] The day after the plea proceeding, defendant gave the following written statement to the probation department on a form entitled "Defendant's Version of Instant Offense": "I used foul language, (swore) in front of my son."

6

that defendant provided a factual basis for child abuse because he admitted that he was a foster parent in charge of a minor and that "he did curse [and] use foul language" in the child's presence. The court determined that none of defendant's arguments justified a withdrawal of his plea.

The sentencing followed. In his allocution, defendant told the court: "I felt, in the interest of justice, it would be the right thing to do to accept the plea, but accepting the plea would be understanding that the plea is valid, not invalid . . . ." Before imposing sentence, the court repeated that defendant had admitted "that he did use foul language or curse" in the presence of his foster child. In accordance with the plea agreement, the court sentenced defendant to the time he had served in the Morris County Correctional Facility -- 1231 days in all.[4] The court assessed the requisite financial penalties mandated by statute, but imposed no monetary fine. The remaining charges in the indictment were dismissed.

Defendant appealed.

### C.

In an unpublished opinion, the Appellate Division affirmed the trial court's denial of defendant's motion to withdraw his

---

[4] The jail time credit of 1231 days exceeded the maximum eighteen-month sentence that could have been imposed for the fourth-degree crime of child abuse. See N.J.S.A. 2C:43-6(a)(4).

guilty plea. In particular, the appellate panel determined that, "in the context of the circumstances of the plea colloquy, defendant provided a factual basis for his guilty plea." The panel acknowledged that the "profane" language proscribed by N.J.S.A. 9:6-1(d) "must be 'habitual' and defendant only admitted to using off-color language without specifying the frequency." Nevertheless, the panel held that "defendant was unequivocal in stating that he committed the child [abuse] offense by engaging in language that tended to debauch a child's morals, hardly a result that comes from one profane word." The panel did not address -- but apparently assumed -- that the use of curse words or off-color language satisfied the requirement of using "profane, indecent or obscene language" under N.J.S.A. 9:6-1(d). Last, the court rejected defendant's alternative arguments in support of his withdrawal motion.

D.

We granted defendant's petition for certification. State v. Tate, 216 N.J. 367 (2013). We also granted the motion of the American Civil Liberties Union of New Jersey (ACLU) to participate as amicus curiae.

II.

Defendant urges the Court to vacate the guilty plea to child abuse because he did not provide a factual basis that

8

established a violation of N.J.S.A. 9:6-1(d) and N.J.S.A. 9:6-3.[5] Defendant argues that his admission to using "off-color" words does not equate to using "profane, indecent or obscene language" -- the language proscribed under the statute. Moreover, even assuming that off-color or curse words are equivalent to "profane, indecent or obscene language," defendant contends that he never admitted to using such language "habitual[ly]" -- another essential requirement for a violation of N.J.S.A. 9:6-1(d) and N.J.S.A. 9:6-3. Additionally, in this appeal, for the first time, defendant raises a challenge to the constitutionality of those statutes.

The ACLU submits that N.J.S.A. 9:6-1(d) and N.J.S.A. 9:6-3, which criminalize the use of non-obscene profanity, are unconstitutionally overbroad and vague and trench on free-speech rights protected by the United States and New Jersey Constitutions. The ACLU notes that defendant "was penalized for the mere use of 'curse words' and 'off-color language,'" which do not necessarily "fall in the constitutionally unprotected category of obscenity." The ACLU opines that, under the statutes, a parent could commit a crime for "merely cursing at

---

[5] Defendant has advanced several arguments in support of his motion to withdraw his guilty plea to child abuse. Because we only address whether that plea should have been vacated for lack of an adequate factual basis, we do not present defendant's other arguments.

9

the television every week during a football game."  The ACLU also agrees with defendant that the plea colloquy failed to set forth a factual basis for a violation of the child-abuse statutes.

In contrast, the State argues that defendant's admission to cursing in a way that would debauch the morals of a child and to using off-color language satisfies the statutory proscription against the habitual use of profane, indecent, or obscene language in the presence of a minor.  The State infers the habitual use of such language in R.G.'s presence because defendant admitted that R.G. resided in his home for a three-month period and because defendant "in no way limited his factual admission . . . to a specific instance of conduct."  The State also posits that, in deciding whether to vacate a plea for an inadequate factual basis, a court may "consider evidence that was available to the prosecutor and defendant through discovery" when the plea was entered.  From this premise, the State reasons that defendant's admission to the use of curse words and off-color language may be considered along with "the affidavit of arrest," which purportedly "details how the victim told police that the defendant had sexually explicit conversations with him."

Last, the State asks this Court to disregard the constitutional challenges to N.J.S.A. 9:6-1(d) and N.J.S.A. 9:6-

3, which are raised here for the first time. The State contends that defendant did not attack the constitutionality of those statutes in the trial court or Appellate Division and that amicus cannot raise arguments not advanced by the parties. Alternatively, the State maintains that the statutes are not facially vague or overbroad and pass constitutional muster as applied to the facts of this case.

III.

A.

The standard of review of a trial court's denial of a motion to vacate a guilty plea for lack of an adequate factual basis is de novo. Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."). An appellate court is in the same position as the trial court in assessing whether the factual admissions during a plea colloquy satisfy the essential elements of an offense. When reviewing the adequacy of the factual basis to a guilty plea, the trial court is not making a determination based on witness credibility or the feel of the case, circumstances that typically call for deference to the trial court. See State v. Barboza, 115 N.J. 415, 422 (1989) ("The discretion of the trial court in assessing a plea is limited to assuring that the criteria for a valid plea of guilty

11

have been met."). In short, if a factual basis has not been given to support a guilty plea, the analysis ends and the plea must be vacated.

Significantly, the standard of review here is different from a court's denial of a motion to withdraw a guilty plea where the plea is supported by an adequate factual basis but the defendant later asserts his innocence. In that circumstance, the trial court's decision is judged by the four-prong test set forth in Slater, supra: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal [will] result in unfair prejudice to the State or unfair advantage to the accused." 198 N.J. at 157-58. In a Slater scenario, the appellate standard of review is abuse of discretion. State v. Lipa, 219 N.J. 323, 332 (2014). That is so because the trial court is making qualitative assessments about the nature of a defendant's reasons for moving to withdraw his plea and the strength of his case and because the court is sometimes making credibility determinations about witness testimony.

To be clear, when the issue is solely whether an adequate factual basis supports a guilty plea, a Slater analysis is unnecessary. See State v. Campfield, 213 N.J. 218, 230-32, 235-37 (2013) (analyzing whether factual basis existed without

12

discussing Slater factors); see also State ex rel. T.M., 166 N.J. 319, 325-27, 332-37 (2001) (concluding there was inadequate factual basis for defendant's guilty plea without discussing factors for plea withdrawal). This is a point that may not have been fully understood by the parties.

Here, we must also construe the meaning of the statutes governing child abuse and Rule 3:9-2. Our interpretation of a statute and a court rule is de novo as well. Willingboro Mall, Ltd. v. 240/242 Franklin Ave., L.L.C., 215 N.J. 242, 253 (2013) ("In construing the meaning of a court rule or a statute, our review is de novo, and therefore we owe no deference to the trial court's or Appellate Division's legal conclusions.").

B.

We next discuss our court rule and case law requiring that a defendant provide a factual basis to support a guilty plea.

Under our jurisprudence, a person cannot be punished for violating a criminal statute unless he has been convicted at trial or he has admitted his guilt through the entry of a plea. At a trial, the factfinder must be satisfied that the proofs establish guilt; at a plea hearing, a judge must be satisfied that the defendant has given a factual account that makes him guilty of the crime. R. 3:9-2. Like a trial, a plea hearing is intended to "ensur[e] that innocent people are not punished for crimes they did not commit." See State v. Taccetta, 200 N.J.

13

183, 198 (2009).

Rule 3:9-2, in part, provides that a court shall not accept a guilty plea

> without first questioning the defendant personally, under oath or by affirmation, and <u>determining by inquiry of the defendant and others, in the court's discretion, that there is a factual basis for the plea</u> and that the plea is made voluntarily, not as a result of any threats or of any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea.
>
> [(Emphasis added).]

The principal purpose of the factual-basis requirement of Rule 3:9-2 is to "protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." Barboza, supra, 115 N.J. at 421 (internal quotation marks omitted). Rule 3:9-2 serves as a fail-safe mechanism that filters out those defendants whose factual accounts do not equate to a declaration of guilt. Thus, before accepting a guilty plea, "the trial court must be 'satisfied from the lips of the defendant that he committed the acts which constitute the crime.'" State v. Smullen, 118 N.J. 408, 415 (1990) (quoting Barboza, supra, 115 N.J. at 422) (restated in Slater, supra, 198 N.J. at 155). A factual basis for a plea must include either an admission or the

14

acknowledgment of facts that meet "'the essential elements of the crime.'" T.M., supra, 166 N.J. at 333 (quoting State v. Sainz, 107 N.J. 283, 293 (1987)); see also Campfield, supra, 213 N.J. at 232 ("The trial court's task is to ensure that the defendant has articulated a factual basis for each element of the offense to which he pleads guilty.").[6]

T.M. is illustrative of this point. There, the defendant pled guilty to fourth-degree criminal sexual contact under N.J.S.A. 2C:14-3b. T.M., supra, 166 N.J. at 322. Although the defendant acknowledged that he had touched and kissed the private areas of a child, id. at 323, we held that the factual basis was inadequate because he did not acknowledge that he committed those acts with "'the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying [himself],'" id. at 333 (quoting N.J.S.A. 2C:14-1d). That state-of-mind requirement is an essential element of criminal sexual contact. Id. at 333-34. T.M. reminds us that a factual basis must be given for every element of even the most heinous of crimes. See id. at 333.

---

[6] We recognize that, in certain limited circumstances, a particular element of an offense may address a fact that is beyond a defendant's knowledge. For example, a defendant may not know whether an unlawful transaction occurred within 1000 feet of a school. To satisfy such an element, the prosecutor should make an appropriate representation on the record at the time of the hearing, so that the defendant can acknowledge or dispute it.

In the end, a court must "reject a guilty plea absent the defendant's admission of 'the distasteful reality that makes the charged conduct criminal.'" Campfield, supra, 213 N.J. at 231 (quoting T.M., supra, 166 N.J. at 334-35).

## C.

The State argues that a court may look to evidence beyond the words spoken at the plea colloquy -- such as the affidavit of arrest -- to establish a factual basis. As support for that proposition, the State cites to State v. Mitchell, 126 N.J. 565, 581-82 (1992). We reject that argument and do not rely on Mitchell here for two reasons. First, Mitchell did not involve a motion to vacate a plea before or shortly after sentencing. Id. at 572. Rather, in Mitchell, the defendant challenged the factual basis of a plea for the first time on post-conviction relief six-and-one-half years after his sentencing. Id. at 572, 574. The Court determined that the defendant's post-conviction relief petition in Mitchell was both time-barred and procedurally barred. Id. at 572. The Court wrote in Mitchell "that this case does not present the type of exceptional circumstances that would justify [the] relaxation" of our rules governing post-conviction relief. Ibid. Despite resolving the issue on procedural grounds, the Court upheld the factual basis of the guilty plea. Id. at 572, 581.

Mitchell stated that an assessment of the factual adequacy

16

of a guilty plea may include such "surrounding circumstances" as "the proceedings of [a] co-defendant's trial" and a defendant's "presentence report."  Id. at 581-82.  Generally speaking, the manner in which Mitchell used "surrounding circumstances" finds no support in our jurisprudence, not even in the cases Mitchell cited -- Barboza and Sainz.  While it is true that Barboza and Sainz state that a court may look to "all surrounding circumstances" to determine whether a factual basis was given, they do not indicate that a court may look to sources that go beyond the actual facts, spoken or acknowledged, at the plea colloquy.  Barboza, supra, 115 N.J. at 422; Sainz, supra, 107 N.J. at 293.  Indeed, Sainz, which first used the "surrounding circumstances" language, cited as authority State v. Heitzman, 209 N.J. Super. 617, 620-21 (App. Div. 1986), aff'd, 107 N.J. 603 (1987), a case that looked only to the plea colloquy in upholding the factual basis of a guilty plea.  Importantly, both Barboza and Sainz reaffirmed the basic principle that the factual basis for a guilty plea must come directly from the defendant and not from informational sources outside of the plea colloquy.  Barboza, supra, 115 N.J. at 422 (stating that "the trial court must be satisfied from the lips of the defendant that he committed the acts which constitute the crime" (internal quotation marks omitted)); Sainz, supra, 107 N.J. at 293 ("The factual basis for a guilty plea must obviously include

17

defendant's admission of guilt of the crime or the acknowledgement of facts constituting the essential elements of the crime.").

In Mitchell, the "surrounding circumstances" to the plea informed the Court's decision that no fundamental injustice warranted a relaxation of the post-conviction relief time limitations; however, surrounding circumstances cannot substitute for the failure to elicit an adequate factual basis from a defendant, where a timely motion or appeal is made to vacate a plea. For those reasons, we do not follow Mitchell here.

IV.

We now turn to the substantive law applicable to this case.

The essential elements of child abuse are found in two statutes. N.J.S.A. 9:6-3 states that "[a]ny parent, guardian or person having the care, custody or control of any child" who abuses that child commits a fourth-degree crime. Child abuse is defined in various ways under N.J.S.A. 9:6-1, but only one form of such abuse is relevant in this case. N.J.S.A. 9:6-1(d) provides that child abuse consists of "the habitual use . . . in the hearing of [a] child, of profane, indecent or obscene language." In this case, a factual basis to the guilty plea of child abuse had to satisfy these elements: (1) defendant had custody or control of thirteen-year-old R.G., a minor; (2) he

18

used profane, indecent, or obscene language in the presence of R.G.; and (3) he did so on a habitual basis.

That defendant, as a foster parent, had custody or control of R.G. for three months is not in dispute. The question is whether defendant's factual basis met the remaining elements.

The current language in N.J.S.A. 9:6-1(d) is unchanged from the original legislation enacted in 1915. L. 1915, c. 246, § 1. The statutory scheme does not define "profane, indecent or obscene" language or the word "habitual." In the absence of a legislative definition, we generally "ascribe[] to the words used 'their ordinary meaning and significance.'" Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)); see also N.J.S.A. 1:1-1 (stating that customarily "words and phrases" in statute are to "be given their generally accepted meaning, according to the approved usage of the language"). The general dictionary definitions of those words have remained remarkably similar since the enactment of the 1915 legislation. That is not to say that the social taboos regarding the usage of certain words in 1915 are the same as those of the present day.

The words profane and indecent, and even obscene, are not susceptible to neat and fixed definitions. Profane is defined variously as "serving to debase or defile that which is holy or worthy of reverence"; "characterized by abusive language

19

directed [especially] against the name of God"; "indulging in cursing or vituperation"; and "marked by insulting or perverted utterance." Webster's Third New Int'l Dictionary 1810 (3d ed. 1981); see also The Century Dictionary 4754 (1913) (defining profane as "[i]rreverent toward God or holy things; speaking or spoken, acting or acted, in manifest or implied contempt of sacred things; blasphemous" and "[t]o put to a wrong use; employ basely or unworthily").

Indecent is defined variously as "altogether unbecoming"; "contrary to what the nature of things or what circumstances would dictate as right or expected or appropriate"; "not conforming to generally accepted standards of morality"; "tending toward or being in fact something generally viewed as morally indelicate or improper or offensive"; and "being or tending to be obscene." Webster's Third New Int'l Dictionary, supra, at 1147; see also The Century Dictionary, supra, at 3052 (defining "indecent" in 1913 as "[u]nbecoming; unseemly; violating propriety in language, behavior, etc."; and "[g]rossly vulgar; offensive to modesty; obscene; lewd").

Obscene is defined variously as "grossly repugnant to the generally accepted notions of what is appropriate"; "abhorrent to morality or virtue"; "inciting or designed to incite to lust, depravity, indecency"; and "marked by violation of accepted language inhibitions and by the use of words regarded as taboo

20

in polite usage." Webster's Third New Int'l Dictionary, supra, at 1557; see also The Century Dictionary, supra, at 4062 (defining "obscene" in 1913 as "[o]ffensive to the senses; repulsive; disgusting; foul; filthy"; and "[o]ffensive to modesty and decency; impure; unchaste; indecent; lewd").

Curse words and off-color language may fall both in and out of the range of the definitions of profane, indecent, and obscene language. Among the definitions of "curse" is "any utterance marked by malediction or execration"; "to rail at typically impiously and profanely"; "blaspheme"; "to swear at"; and to "invoke divine vengeance or anger against -- sometimes used with out." Webster's Third New Int'l Dictionary, supra, at 558; see also Webster's Unabridged Dictionary of the English Language 492 (2001) (defining "curse word" as "profane or obscene word, [especially] as used in anger or for emphasis"; and "any term conceived of as offensive").

"Off-color" is defined as "being of doubtful propriety"; "not socially acceptable"; "dubious"; and "risqué." Webster's Third New Int'l Dictionary, supra, at 1566.

In light of the definitions of those words, we must determine whether defendant in his plea colloquy admitted to using profane, indecent, or obscene language in violation of N.J.S.A. 9:6-1(d).

V.

21

With the applicable legal principles in mind, we now examine whether the factual basis elicited from defendant to support his guilty plea satisfied the elements of child abuse. That is, did defendant admit to or acknowledge uttering profane, indecent, or obscene language in the presence of R.G. on a habitual basis? As we discussed, the words profane, indecent, and obscene are susceptible to various interpretations -- and reasonable people may have different understandings of the meaning of those words. Here, defendant was never asked precisely what words he uttered that fit the statutory language. Defendant merely answered, "Yes," to the question, "did you curse in [R.G.'s] presence to and in a way that would debauch his morals?" and, "Yes," to the question, "you used off-color language in his presence?"

Curse words and off-color language many times will be synonymous with profane, indecent, or obscene language, but not always. Therefore, it is not possible to determine whether defendant's use of a curse word or off-color language is the equivalent of the language proscribed by the child-abuse statutes. Conceptions of what constitutes a curse word -- even ones that would debauch the morals of a minor -- and off-color language may differ among reasonable people. What is profane or indecent may depend on social norms that are fluid.

The flaw in the plea colloquy was the failure to elicit the

22

actual words and language uttered by defendant in the presence of R.G.  Only then would the court have been in a position to make an independent determination whether the purportedly offending language constituted child abuse.

Moreover, even if we accept that the use of curse words or off-color language is the equivalent of "profane, indecent or obscene language," N.J.S.A. 9:6-1(d), the plea colloquy did not elicit whether defendant engaged in the "habitual use" of such language.  The "habitual use" of the statutorily proscribed language is an element of child abuse.  Ibid.  Defendant's factual account does not satisfy that element.  We cannot infer from defendant's admission that because R.G. lived with him for three months, defendant therefore must have habitually cursed in the minor's presence.

Eliciting an adequate factual basis should not be a complex or difficult undertaking if a defendant is willing and able to give a truthful account of the conduct that violates a statute. We are aware of the long procedural history of this case, and that the State attributes delays to defendant and that defendant complains about the one-day-only plea offer.  But the sole matter of consequence that we address is whether the factual basis given during the plea colloquy conforms to our court rules and jurisprudence.

We need not decide whether N.J.S.A. 9:6-1(d) is so broadly

23

and vaguely worded that it treads on constitutionally protected free-speech or due-process rights, or the right of a parent to raise a child without undue interference by the State.[7]  Here, the factual basis does not comport with the requirements of our court rules or jurisprudence and, therefore, we choose not to reach the constitutional issue raised for the first time on appeal before us.  Randolph Town Ctr., L.P. v. Cnty. of Morris, 186 N.J. 78, 80 (2006) ("Courts should not reach a constitutional question unless its resolution is imperative to the disposition of litigation.").

Because we conclude that the factual basis does not satisfy the elements of N.J.S.A. 9:6-1(d), we are constrained to vacate defendant's plea of guilty to child abuse.

## VI.

For the reasons explained, we reverse the judgment of the Appellate Division and vacate defendant's guilty plea to child abuse.  Defendant is returned to the position where he stood before he entered his guilty plea.  His indictment, therefore, is reinstated and this matter is remanded for further

---

[7] Amicus ACLU cites to the New Jersey Law Revision Commission, which recommends the deletion of N.J.S.A. 9:6-1(d).  See N.J. Law Revision Comm'n, Final Report Relating to Title 9-Child Abuse and Neglect 2, 5, 49 (2014).  However, the Law Revision Commission proposal is not pertinent to our analysis.  It is not our role to pass on the wisdom of current or proposed legislation.  In re P.L. 2001, Chapter 362, 186 N.J. 368, 391 (2006).

24

proceedings.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE ALBIN's opinion.

SUPREME COURT OF NEW JERSEY

NO.    A-46                           SEPTEMBER TERM 2013

ON CERTIFICATION TO     Appellate Division, Superior Court

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

          v.

JOHN TATE,

      Defendant-Appellant.

DECIDED              February 2, 2015
          Chief Justice Rabner                    PRESIDING

OPINION BY              Justice Albin

CONCURRING/DISSENTING OPINIONS BY

DISSENTING OPINION BY

| CHECKLIST | REVERSE/ VACATE/ REINSTATE/ REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |

1