# RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4228-19T1

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

E.J.H.,[1]

    Defendant-Respondent.

APPROVED FOR PUBLICATION

January 19, 2021

APPELLATE DIVISION

Submitted January 6, 2021 – Decided January 19, 2021

Before Judges Whipple, Rose and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FO-20-0144-20.

Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney for appellant (Michele C. Buckley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

Bramnick, Rodriguez, Grabas, Arnold & Mangan, LLC, attorneys for respondent (Michael Noriega, of counsel and on the brief).

    The opinion of the court was delivered by

---

[1] We use initials to protect the confidentiality of the victim, R. 1:38-3(d)(10), and a pseudonym for ease of reference.

ROSE, J.A.D.

The State appeals from the Family Part's July 7, 2020 order, sua sponte dismissing its February 23, 2020 complaint that charged defendant E.J.H. with the disorderly persons offense of contempt, N.J.S.A. 2C:29-9(b)(2), for violating a temporary restraining order (TRO) issued under the Prevention of Domestic Violence Act (Act), N.J.S.A. 2C:25-17 to -35.  During the plea hearing, the trial judge rejected defendant's factual basis and refused to accept defendant's guilty plea, finding as a matter of law that defendant did not knowingly violate the TRO.  Instead, the judge determined that defendant's comments and lewd gesture directed to his estranged wife, I.Y.H. (Irene) – by way of a "Nest" home security camera consensually activated in defendant's home – did not constitute proscribed "contact" under the TRO.  We disagree.  Accordingly, we vacate the order and remand for reinstatement of the complaint.

The facts are straightforward; for purposes of this appeal, they are largely undisputed.  Issued on January 31, 2020, the TRO prohibited defendant from "having **any** oral, written, personal, electronic, or other form of contact or communication with [Irene]."  The TRO also limited defendant's parenting time with the couple's daughter to supervised visitation by two adult family members, who were preapproved by Irene, and required defendant to "have the Nest

cameras on at all times." The TRO was issued based upon allegations of an incident that occurred on November 21, 2019 and the couple's prior history of domestic violence.

Less than one month after the entry of the TRO, on February 23, 2020, Irene filed the complaint at issue, claiming defendant "spoke directly to her via the court[-]mandated N[est] camera during his supervised visitation of their minor daughter." As alleged in the complaint, defendant "stopped speaking to his parents" then "looked directly at the camera and stated, 'Oh I'm sorry I wasn't nice to you. Good reason to keep my daughter from me for three months, because I wasn't nice to you.'" Irene further reported defendant "then made a lewd gesture at the camera."

On July 7, 2020, defendant agreed to plead guilty as charged; in exchange the State recommended a probationary term, to be served concurrently with the probationary term defendant was serving. During his plea allocution, defendant acknowledged the TRO required the Nest camera's "active" operation during his parenting time. Defendant said the issuing judge, who was not the plea judge, ordered the activation of Nest cameras in defendant's home as an "amendment to [the couple's] existing consent order."[2]

---

[2] Neither the consent order nor the plea agreement was provided on appeal.

Defendant admitted he "turned towards the camera," spoke, and "made a gesture" that was "referred to in [the] complaint." When asked whether he "knew by making that gesture or verbal communication into the camera" he violated the TRO, defendant responded:

> In hindsight, yes. . . . I don't want to, you know, complicate things. I don't know when [Irene]'s watching and when she's not. And my understanding is I should have known. And if I should have known, and [the Nest camera is] on . . . I'm imputed with that knowledge, then . . . yes, I should have known, . . . and in hindsight I shouldn't have done it.

Upon further questioning, defendant clarified he was "aware" those communications would have violated the TRO if Irene was present at the time they were made.

Concerned defendant's communications were not made "in person" but rather via "a video camera that was ordered to be placed into a home," the trial judge recessed briefly, reviewed the TRO, and conferred with the issuing judge. Following colloquy with counsel, the judge dismissed the complaint, concluding the order did not place defendant "on notice that while he's in his house, in his living room with his family, he's not allowed to 'flip the bird' or curse or yell."

In reaching her decision, the judge noted defendant's consent to permit the Nest cameras in his home did not "take away his freedom of speech" or "his

4

right to get angry and yell in his home." The judge found defendant's conduct did not constitute any contact prohibited by the terms of the TRO because "he didn't call [Irene]. He didn't text her. He didn't send her a letter. He didn't go to her house." Rather, Irene was "in his living room. She [was] in his house. This is what she agreed to, to be in his house." This appeal followed.

We review de novo challenges to the factual basis for a guilty plea. State v. Tate, 220 N.J. 393, 403-04 (2015). That is so because "[a]n appellate court is in the same position as the trial court in assessing whether the factual admissions during a plea colloquy satisfy the essential elements of an offense." Id. at 404. Accordingly, we need not defer to the trial court's determination as to whether a defendant presented an adequate factual basis for his plea. Ibid. Our review of the law is plenary. State v. Urbina, 221 N.J. 509, 528 (2015) (citing Tate, 220 N.J. at 404).

Because a violation of a restraining order is punishable as a criminal act, the defendant is entitled to the rights of all criminal defendants. N.J.S.A. 2C:25-30. Trial courts may not accept a guilty plea unless there is a factual basis supporting it. R. 3:9-2; see also Tate, 220 N.J. at 404. The defendant's factual basis must satisfy each element of the offense charged. See State v. Perez, 220 N.J. 423, 432 (2015); State v. Campfield, 213 N.J. 218, 236 (2013); see also

A-4228-19T1

N.J.S.A. 2C:1-13(a) (requiring the State prove each element of the offense charged beyond a reasonable doubt otherwise "the innocence of the defendant is assumed").

A person is guilty of contempt "if that person purposely or knowingly violates any provision in an order entered under the provisions of the [Act]." N.J.S.A. 2C:29-9(b)(1). Conduct constituting a violation of a domestic violence restraining order, which would otherwise not constitute a crime, is treated as a criminal disorderly persons offense and is prosecuted in the Family Part without indictment. Ibid.; N.J.S.A. 2C:25-30.

Pertinent to this appeal, "the evidence must allow at least a reasonable inference that a defendant charged with violating a restraining order knew his conduct would bring about a prohibited result." State v. S.K., 423 N.J. Super. 540, 547 (App. Div. 2012). "[T]he Act may not be construed in a manner that precludes otherwise reasonable conduct unless the orders issued pursuant to the Act specifically proscribe particular conduct by a restrained spouse." State v. Krupinski, 321 N.J. Super. 34, 45 (App. Div. 1999). "A person acts knowingly with respect to the nature of his conduct or the attendant circumstances if he is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence." N.J.S.A. 2C:2-2(b)(2).

Our decision in State v. D.G.M., alluded to without citation in the trial judge's decision, does not support her decision here. 439 N.J. Super. 630 (App. Div. 2015). In D.G.M., the complainant obtained a final restraining order (FRO) against the defendant pursuant to the Act, which "'prohibited' [the] defendant 'from having any (oral, written, personal, electronic or other) form of contact or communication with'" the complainant. Id. at 633. Thereafter, the defendant and the complainant attended their child's soccer game. Id. at 634. The defendant sat near the complainant and recorded the game and the complainant on his cell phone. Ibid.

The State in D.G.M. charged the defendant with criminal contempt under N.J.S.A. 2C:29-9(b), and he was found guilty. Ibid. On appeal, we held that the defendant had engaged in a form of "communication" with the complainant. Id. at 640-41. We decided, however, the defendant's conviction for contempt could not stand because he could not have known his specific conduct violated the FRO and could result in a criminal prosecution. Id. at 642.

Although the TRO here did not expressly prohibit defendant from directing remarks to – or making gestures at – Irene via the Nest camera, the order expressly prohibited defendant from "having **any** oral" or "electronic, or other form of contact or communication with [his estranged wife]."

Acknowledging the Nest camera was working, defendant admitted under oath he positioned himself toward the camera and directed his comments about Irene and a lewd gesture at Irene, whose virtual presence in his home was expressly authorized by the TRO.

For reasons that are neither clear from the record nor pertinent to this appeal, defendant consented to the activation of three Nest home security cameras in his home as a condition precedent to supervised parenting time with his daughter. Pursuant to that arrangement, defendant opened his home and permitted Irene to enter through electronic means to observe defendant's interactions with their daughter. Indeed, the purpose of the Nest cameras was to ensure Irene's ability to observe those interactions, following a three-month lapse in defendant's parenting time.

Under the circumstances here, defendant was aware of the high probability that Irene would hear his comments and observe his lewd gesture, which clearly were directed at her. The medium chosen by defendant was not unlike sending a video or message via text or email. As Justice Albin observed in the Fourth Amendment context, "[t]he law must adapt to technological advances." State v. Hubbard, 222 N.J. 249, 276 (2015) (Albin, J., concurring); see also C.C. v. J.A.H., 463 N.J. Super. 419, 424 (App. Div.), certif. denied, 244 N.J. 339 (2020)

A-4228-19T1

(holding "the proliferate and exceedingly intimate communications between the parties constituted a dating relationship within the meaning of the Act and supported entry of the final restraining order").

Based on our de novo review of the record and governing principles, we therefore conclude defendant acted knowingly, N.J.S.A. 2C:2-2(b)(2), and his contact violated the TRO, N.J.S.A. 2C:29-9(b)(1).  Accordingly, we reverse the Family Part order, reinstate the complaint, and direct that the matter be remanded to another judge with no prior involvement with this family.  See State in the Interest of C.F., 458 N.J. Super. 134, 147 (App. Div. 2019) (quoting Entress v. Entress, 376 N.J. Super. 125, 133 (App. Div. 2005)) ("In an abundance of caution, we direct that this matter be remanded to a different judge for the plenary hearing to avoid the appearance of bias or prejudice based upon the judge's prior involvement with the matter . . . .").

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4228-19T1