# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1007-20

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

A.H.F.,

     Defendant-Appellant.

_____

Submitted May 3, 2022 – Decided June 28, 2022

Before Judges Hoffman and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 19-02-0147.

Joseph E. Krakora, Public Defender, attorney for appellant (Ruth E. Hunter, Designated Counsel, on the brief).

William A. Daniel, Union County Prosecutor, attorney for respondent (Meredith L. Balo, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from his guilty plea conviction for third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(2). Defendant contends that the trial court erred by denying his motion to vacate his guilty plea on the grounds that he did not provide an adequate factual basis at the plea hearing. After reviewing the record of the plea colloquy, we reject defendant's contention and affirm.

I.

We discern the following facts and procedural history from the record. On October 11, 2018, defendant drove his car along Union Avenue in Elizabeth. Defendant pulled the vehicle alongside a fourteen-year-old girl, M.A.,[1] and began to yell at her in an aggressive manner, directing her to get into the car. M.A. was not related to defendant and in fact was a complete stranger to him.

In February 2019, a Union County grand jury indicted defendant for second-degree attempt to lure or entice a child, N.J.S.A. 2C:13-6(a), and third-degree endangering the welfare of a child by a non-caretaker, N.J.S.A. 2C:24-4(a)(2). On August 2, 2019, defendant appeared before Judge Robert A. Kirsch and entered a guilty plea to the third-degree child endangerment count, pursuant to a negotiated agreement in which the State agreed to dismiss the count

_____

[1] We use initials to protect the identity of the minor. See R. 1:38-3(d)(9).

charging second-degree luring.  At the plea hearing, defendant was placed under oath and provided the factual basis for his guilty plea in the following colloquy with defense counsel and Judge Kirsch:

> COUNSEL: Mr. Figueroa, on October 11, 2018[,] were you in the city of Elizabeth?
>
> DEFENDANT: Yes.
>
> COUNSEL: And were you driving your vehicle?
>
> DEFENDANT:  Yes.
>
> COUNSEL:  And what kind of vehicle was it?
>
> DEFENDANT:  Chevy Impala.
>
> COUNSEL:  And you were driving your Chevy Impala on what street?
>
> DEFENDANT:  On Union Avenue.
>
> COUNSEL:  And on Union Avenue did you see a girl walking on the block?
>
> DEFENDANT:  Yes.
>
>         . . . .
>
> COUNSEL:  And you approached M.A. and M.A. was an individual that was a minor, correct?
>
> DEFENDANT:  Yes.
>
> THE COURT:  And it was obvious to you, correct, Mr. Figueroa, that this was a child?

3

A-1007-20

DEFENDANT:  Yes.

COUNSEL:  She was actually in a school uniform and appeared to be walking to school, correct?

DEFENDANT:  Yes.

        . . . .

COUNSEL:  And you pulled up your—your Chevy Impala alongside the individual in this—in this—the victim in this case, correct?

DEFENDANT:  Yes.

COUNSEL:  And when you pulled up your vehicle alongside the victim you yelled at her in an aggressive manner, correct?

DEFENDANT:  Yes.

COUNSEL:  And you yelled at her in an aggressive manner in an attempt to get her in your car, correct?

DEFENDANT:  Yes.

COUNSEL:  And by doing so the victim in this matter became upset, distressed, and in a manner that rendered her a[n] abused and neglected child, correct?

DEFENDANT:  Yes.

COUNSEL:  And you knew that was illegal to do that, correct?

DEFENDANT:  Yes.

4

A-1007-20

THE COURT: Mr. Figueroa, you were not related to this child, were you?

DEFENDANT: No.

THE COURT: She was a complete stranger to you?

DEFENDANT: Yes.

The judge accepted defendant's guilty plea after questioning defendant as to his understanding of the proceedings and the consequences of his pleading guilty. The judge explicitly asked defendant whether he was entering the guilty plea "voluntarily, meaning on [his] own accord." Defendant confirmed that he was pleading guilty voluntarily.

Following the entry of the guilty plea, defendant requested the judge to adjourn sentencing for six months "to allow him to get his family affairs in order . . . ." Judge Kirsch granted defendant's request, scheduling the sentencing hearing for February 7, 2020.

Around February 1, 2020, defendant moved to withdraw his guilty plea. Judge Kirsch heard oral argument on defendant's motion to withdraw his guilty plea on June 30, 2020. The judge denied defendant's motion to withdraw his guilty plea, rendering a nineteen-page written opinion that thoroughly analyzed

the four-factor test[2] established in State v. Slater, 198 N.J. 145, 155 (2009). In the opinion, the judge explained that (1) defendant had not demonstrated a colorable claim of innocence, (2) defendant's reasons for withdrawal were weak, (3) defendant entered his plea as part of a plea bargain, and (4) the State may suffer prejudice due to defendant's delay in attempting to withdraw his guilty plea.

On August 13, 2020, Judge Kirsch sentenced defendant to probation for a period of five years. The judge ordered defendant to serve 270 days in county jail as a condition of probation. The judge also ordered defendant to have no contact with M.A., M.A.'s residence, or M.A.'s school.

This appeal follows. Defendant raises the following contention for our consideration:

> POINT I
>
> DEFENDANT DID NOT PROVIDE AN ADEQUATE FACTUAL BASIS FOR ENDANGERING THE

---

[2] Slater requires trial courts to consider and balance four factors in evaluating motions to withdraw a guilty plea: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature of strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." 198 N.J. at 157–58. We note that defendant on appeal does not challenge the trial court's analysis of the Slater factors. In State v. Tate, 220 N.J. 393, 404 (2015), the Court made "clear, when the issue is solely whether an adequate factual basis supports a guilty plea, a Slater analysis is unnecessary."

WELFARE OF A CHILD BECAUSE HE DID NOT "ACKNOWLEDGE [] [THE] FACTS CONSTITUTING THE ESSENTIAL ELEMENTS OF THE CRIME." (citing State v. Sainz, 107 N.J. 283, 293 (1987)).

## II.

We begin our analysis by acknowledging the legal principles governing this appeal. "The standard of review of a trial court's denial of a motion to vacate a guilty plea for lack of an adequate factual basis is de novo." Tate, 220 N.J. at 403–04. "An appellate court is in the same position as the trial court in assessing whether the factual admissions during a plea colloquy satisfy the essential elements of an offense." Id. at 404.

Rule 3:9-2 provides that

> [t]he court, in its discretion, may refuse to accept a plea of guilty and shall not accept such plea without first questioning the defendant personally, under oath or by affirmation, and determining by inquiry of the defendant and others, in the court's discretion, that there is a factual basis for the plea and that the plea is made voluntarily, not as a result of any threats or of any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea.

A trial court's conformance with Rule 3:9-2 need not follow a "prescribed or artificial ritual." State ex rel. T.M., 166 N.J. 319, 327 (2001). A judge must determine that there is "a factual basis for [a] guilty plea." R. 3:9-2. "The factual

7

basis for a guilty plea can be established by a defendant's explicit admission of guilt or by a defendant's acknowledgement of the underlying facts constituting [the] essential elements of the crime." State v. Gregory, 220 N.J. 413, 419 (2015). The defendant's admission "should be examined in light of all surrounding circumstances and in the context of an entire plea colloquy." T.M., 166 N.J. at 327. Importantly, when evaluating the validity of a guilty plea, "our law requires that each element of the offense be addressed in the plea colloquy." State v. Campfield, 213 N.J. 218, 231 (2013).

N.J.S.A. 2C:24-4(a)(2) prescribes the elements of the third-degree crime of endangering a child, providing in relevant part:

> Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who causes the child harm that would make the child an abused or neglected as defined in Rule 9:6-1, Rule 9:6-3, and [L. 1974, c. 119, § 1] is guilty of a crime of the second degree. Any other person who engages in conduct or who causes harm as described in this paragraph to a child is guilty of a crime of the third degree.
>
> [(emphasis added).]

N.J.S.A. 9:6-1 provides:

> Abuse of a child shall consist in any of the following acts: (a) disposing of the custody of a child contrary to law; (b) employing or permitting a child to be employed in any vocation or employment injurious to its health or

dangerous to its life or limb, or contrary to the laws of this State; (c) employing or permitting a child to be employed in any occupation, employment or vocation dangerous to the morals of such child; (d) the habitual use by the parent or by a person having the custody and control of a child, in the hearing of such child, of profane, indecent or obscene language; (e) the performing of any indecent, immoral or unlawful act or deed, in the presence of a child, that may tend to debauch or endanger or degrade the morals of the child; (f) permitting or allowing any other person to perform any indecent, immoral or unlawful act in the presence of the child that may tend to debauch or endanger the morals of such child; (g) using excessive physical restraint on the child under circumstances which do not indicate that the child's behavior is harmful to himself, others or property; or (h) in an institution as defined in [L. 1974, c. 119 § 1] (C. 9:6-8.21), willfully isolating the child from ordinary social contact under circumstances which indicate emotional or social deprivation.

. . . .

Cruelty to a child shall consist in any of the following acts: (a) inflicting unnecessarily severe corporal punishment upon a child; (b) inflicting upon a child unnecessary suffering or pain, either mental or physical; (c) habitually tormenting, vexing or afflicting a child; (d) any willful act of omission or commission whereby unnecessary pain and suffering, whether mental or physical, is caused or permitted to be inflicted on a child; (e) or exposing a child to unnecessary hardship, fatigue or mental or physical strains that may tend to injure the health or physical or moral well-being of such child.

[(emphases added).]

9                                                    A-1007-20

N.J.S.A. 9:6-3 provides,

> Any parent, guardian or person having the care, custody or control of any child, who shall abuse, abandon, be cruel to or neglectful of such child, or any person who shall abuse, be cruel to or neglectful of any child shall be deemed to be guilty of a crime of the fourth degree. If a fine be imposed, the court may direct the same to be paid in whole or in part to the parent, or to the guardian, custodian or trustee of such minor child or children; provided, however, that whenever in the judgment of the court it shall appear to the best interest of the child to place it in the temporary care or custody of a society or corporation, organized or incorporated under the laws of this State, having as one of its objects the prevention of cruelty to children, and the society or corporation is willing to assume such custody and control, the court may postpone sentence and place the child in the custody of such society or corporation, and may place defendant on probation, either with the county probation officers or an officer of the society or corporation to which the child is ordered, and may order the parent, guardian or person having the custody and control of such child to pay to such society or corporation a certain stated sum for the maintenance of such child. When, however, a child is so placed in the custody of such society or corporation, and defendant fails to make the payments as ordered by the court, the court shall cause the arrest and arraignment before it of such defendant, and shall impose upon the defendant the penalty provided in this section.

We next apply the foregoing legal principles to the August 2, 2019, plea hearing. Defendant contends the plea colloquy did not establish an adequate factual basis for his conviction of third-degree endangering the welfare of a child

10

because he did not "acknowledge [the] facts constituting the essential elements of the crime." Sainz, 107 N.J. at 293; see also Gregory, 220 N.J. at 419. More specifically, defendant argues that his yelling at M.A. in an aggressive manner did not cause M.A. harm that would make her an abused or neglected child. Defendant emphasizes that his yelling at M.A. to enter his car did not debauch or endanger the child's morals. Moreover, defendant argues he never admitted that he attempted to lure M.A. "with a purpose to commit a criminal offense against her."[3] Defendant thus claims the judge relied on information outside the plea colloquy to establish the factual basis of his plea in violation of the rule recognized in Tate, 220 N.J. at 408 (reaffirming that the factual basis for a guilty plea must come directly from the defendant and not from informational sources outside of the plea colloquy); see also State v. Barboza, 115 N.J. 415, 422 (1989) (quotation marks omitted) (stating that "the trial court must be satisfied from the lips of the defendant that he [or she] committed the acts which constitute the crime").

The flaw in defendant's argument is that he fails to recognize that there are multiple ways to establish child abuse or neglect. Under N.J.S.A. 2C:24-

_____

[3] We note that defendant did not plead guilty to luring, N.J.S.A. 2C:13-6(a). The first count of the indictment charging that second-degree crime was dismissed in accordance with the negotiated plea agreement.

4(a)(2), it is not necessary for the State to prove that defendant engaged in sexual conduct that would impair or debauch the morals of a child. That proof requirement applies to the second-degree crime set forth in N.J.S.A. 2C:24-4(a)(1). To prove a violation of the third-degree crime set forth N.J.S.A. 2C:24-4(a)(2), the State instead needed to establish that the offender caused the child harm that would make the child an abused or neglected child under N.J.S.A. 9:6-1, N.J.S.A. 9:6-3, and L. 1974, c. 119 § 1.

Defendant's reliance on Tate, 220 N.J. at 393, is therefore misplaced. In Tate, the Court found an inadequate factual basis to support a guilty plea for child abuse where the defendant used "[c]urse words and off-color language" in front of his foster child. Id. at 411. The Court found this testimony insufficient to demonstrate the defendant's "habitual use of profane, indecent, or obscene language" in the presence of the child. Id. at 412.

We stress that the Court in Tate by no means held that N.J.S.A. 2C:24-4 requires a defendant's actions to meet all of the various alternative means for satisfying the definition of abuse or neglect in N.J.S.A. 9:6-1. On the contrary, the Court recognized that "[c]hild abuse is defined in various ways under N.J.S.A. 9:6-1." Id. at 409.

Contrary to defendant's assertion, the plea colloquy in the present matter provided an adequate factual basis to establish child abuse or neglect to support defendant's conviction of third-degree child endangering. Defendant's aggressive instruction to M.A.—a total stranger—to get into his car was sufficient to establish that defendant caused M.A. to endure "unnecessary suffering or pain, either mental or physical," which in turn was sufficient to establish "cruelty to a child" that constitutes a harm for purposes of N.J.S.A. 9:6-1. See Model Jury Charges (Criminal), "Endangering the Welfare of a Child, Abuse or Neglect (Third Degree) (N.J.S.A. 2C:24-4a(2))" (rev. March 9, 2015).

Importantly, defendant admitted during the plea colloquy that his yelling at M.A. caused her to become distressed and upset. Defendant's alarming conduct also satisfies the definition of cruelty to a child in subsection (d), which refers to "any willful act of omission or commission whereby unnecessary pain and suffering, whether mental or physical, [that] is caused or permitted to be inflicted on a child." Ibid.

We add that defendant expressly acknowledged under oath that the circumstances in which he yelled at the victim caused the child to become upset and distressed "in a manner that rendered her a[n] abused and neglected child,"

knowing "that [it] was illegal to do that . . . ." In view of that explicit admission, we are "satisfied from the lips of the defendant that he [or she] committed the acts which constitute the crime." Barboza, 115 N.J. at 422. We thus conclude that defendant adequately "acknowledge[ed the] facts constituting the essential elements of the crime" during the plea colloquy. Sainz, 107 N.J. at 293.

To the extent we have not addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-1007-20