**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5176-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MANUEL F. LOPEZ, a/k/a
MANUEL A. LOPEZ, and
MANUEL A. FALCON-LOPEZ,

    Defendant-Appellant.

_____

          Submitted May 15, 2019 – Decided July 3, 2019

          Before Judges Alvarez and Nugent.

          On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 14-01-0087.

          Andrew Robert Burroughs, attorney for appellant.

          Esther Suarez, Hudson County Prosecutor, attorney for respondent (Alanna M. Jereb, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant appeals from an order that denied his petition for post-conviction relief (PCR). He argues he did not enter his guilty plea to third-degree bail jumping knowingly, intelligently, and voluntarily. He claims his plea was coerced, he was not informed of the mandatory deportation consequences of his plea, and he was denied counsel of his choice. He also contends the assistant public defender who represented him at the plea proceeding was ineffective for, among other reasons, letting these improprieties occur. We agree and reverse.

I.

A.

The record on appeal discloses the following facts. Following his negotiated guilty plea to third-degree unlawful possession of a weapon, based on a recommended sentence of imprisonment for three years with three years of parole ineligibility, defendant failed to appear for his June 8, 2011 sentencing proceeding. Two and one-half years later, in January 2014, a Hudson County grand jury charged defendant in a single-count indictment with third-degree bail jumping, N.J.S.A. 2C:29-7. The parties do not dispute that bail jumping is an offense that results in mandatory deportation under the United States Immigration Code, 8 U.S.C.S. §1101(a)(43)(T). Defendant appeared for a status

conference on Monday, March 10, 2014.  The events of that proceeding are the focus of this appeal.

When the status conference commenced, the Hudson County assistant prosecutor informed the judge that defendant was serving a sentence of three years with three years of parole ineligibility "on a weapon offense out of Bergen County."  The prosecutor explained that defendant had also pled guilty in 2011 to a weapons offense with a recommended sentence of three years with three years of parole ineligibility, but defendant did not appear for sentencing on that offense.  After the assistant prosecutor provided this information to the court, the following colloquy ensued:

> [Prosecutor:]       [T]he State filed bail jumping.  I just relayed a global offer to [defendant], which is a three consecutive to the three with three.
>
> [The Court:]       Three on the bail jumping and three on the gun?
>
> [Prosecutor:]       Well, he already - - three on the bail jumping and he was already looking at – he pled to three with three on the 2010 indictment.
>
> [The Court:]       Okay.
>
> [Prosecutor:]       If the defendant is not interested in taking that offer, the State is going to move to sentence [him] on the next status date.  You took the plea.

After confirming the State's representations with defense counsel, the court continued:

> [The Court:] Well, then he's got today and today only to get a concurrent. If he doesn't take the offer today, it's consecutive.

After additional discussion between defense counsel and the court, defendant entered the discussion.

> [Defendant:] So it's going to be – it's going to be concurrent? Everything is going to be concurrent?
>
> [Defense Counsel:] Yes.
>
> [Defendant:] Everything is going to be concurrent for the three years?
>
> [Defense Counsel:] Yes. Okay. We'll do it now.
>
> [The Court:] Thank you.

Following a recess, a new prosecutor appeared for the State. Asked by the court for the State's recommendation, the following colloquy occurred:

> [Prosecutor:] The defendant is going to plead guilty on the Indictment 87-01-2014, to the sole count, bail jumping in the third degree. The State's recommendation is three years consecutive to his open sentence.
>
> [Defense Counsel:] That's our understanding, Judge, and, now, I understand for my client's sake, I want to make this very, very clear, that the Court has recommended that if [defendant] enters his plea to bail

4

jumping today, that when he comes back to be sentenced on the - - I believe it's the weapons charge that he was to have been sentenced on, on June 8th 2011, that the Court will sentence him to that sentence, which is a three with three, sentence to a flat three on the bail jumping charge concurrent with the flat three and that those two sentences will be concurrent to his present sentence, which is a three with three in Bergen County.

And I have explained to [defendant] that what that may leave him with is two overlapping sentences of three with three and he may end up doing some more time for (indiscernible) - - But I - - without seeing a presentence report in front of me (indiscernible) and so forth, I can't - - I can't assess that accurately. But I - - that's our understanding.

[The Court:]     Correct.

EXAMINATION OF [DEFENDANT] BY THE COURT:

Q.     [Defendant] did you hear that recommendation?

A.     Yes.

Q.     Did [defense counsel] explain it to you?

A.     He explained something there but why is it that the time that I've already done in prison isn't there also concurrent?

Q.     Because you're serving a sentence.

A.     But I'm not hanging out. I'm in prison there.

Q.     You can go to trial, if you want.

A. But they're not giving me the option to be able to come tomorrow to hire a private attorney.

Q. Sure we will. I'll tell you what, no plea. Go to trial. Get you the consecutive term. Take him away.

A. I'm not that guilty.

Q. Good.

[The Court:] Okay. Let's put - - he's arraigned? Today was the arraignment date?

[Court Clerk:] Today was the status date, Judge.

[The Court:] He's been arraigned already?

[Court Clerk:] He's been arraigned.

[The Court:] Put him down for a plea cutoff on Monday.

[Court Clerk:] Monday?

[The Court:] We'll set a trial date.

[Court Clerk:] Yes. He's - -

[The Court:] We'll just keep him there for a week. Actually we can do plea cutoff – - [to defense counsel], you're here on Thursday?

[Defense Counsel:] The answer is - -

[Defendant:] I have a private attorney. My private attorney will come.

6

A-5176-17T4

[The Court:]     Fine.  Have him here Thursday.

[Court Clerk:]     Do you [want] him remanded to the county jail?

[The Court:]  Remand him to the county until Thursday.

Following a discussion concerning the assistant public defender's scheduling conflicts, and his inability to appear on Thursday, the court continued:

> [The Court:]     No.  I'll tell you what we'll do.  Let's produce him - - no.  Do the plea cutoff papers now.  Discovery is complete?
>
> [Prosecutor:]     Judge, I'm not aware.  I'm just standing in.  I would imagine so.
>
> [Defense Counsel:]     Judge, I - - I really have not had a great deal of time to - -
>
> [The Court to Defense Counsel:]     It's a bail jumping charge.  It's not real complicated.  He wants a trial, we'll give him a trial.  I mean, he's turned down a concurrent offer.  There's nothing else we can do.  He had a court date.  He didn't show up.  That's called bail jumping.  Okay?  The State has ruled - - I'm willing to run it concurrent.
>
> He's not happy with it, so let him go to trial.  If he goes to trial, it will be a five to ten consecutive.  Okay?  That's what he wants, that's what he gets.  Bring him in the back.  Do the plea cutoff papers today.  I'm done with him.

A-5176-17T4

[Defense Counsel:]     Hold on.  Hold on.

[The Court:]     I'm not going to hold on.  Bring him in the back.

[Defense Counsel:]     But he's not saying that.

[The Court:]     I'm saying it.  Bring him in the back.

[Defense counsel:]     Okay.

Following a further recess, defense counsel informed the court defendant "had some difficulty understanding how these various sentences work together and has been very paranoid about the issue of concurrency."  Counsel added, "I think he's straight now and he wants to proceed with the plea."

The court asked defendant if he had "heard the recommendation" and defendant replied that he had.  The court asked if defense counsel had explained it.  Defendant answered "yes," and the court asked if he understood it.  Defendant replied, "yes."

After defendant acknowledged that he wanted to plead guilty, defense counsel asked defendant: "Is it true that on June 8th, 2011, you were required to appear before [the judge] to be sentenced on an unrelated case and that you failed to appear?"  Defendant acknowledged that he had failed to appear.  Defendant further acknowledged that on the "previous case, [he] had pled guilty to third-degree unlawful possession of a weapon."

A-5176-17T4

The court informed defendant the maximum penalty for the third-degree bail jumping offense was five years. The court also explained the fines and assessments. The court then stated: "You know I'm giving you a three flat concurrent to the previous charge, correct." Defendant responded affirmatively.

During the court's colloquy with defendant, the court asked defendant to look at the plea forms his attorney "is showing you, the green sheets." The court had defendant acknowledge his attorney "went over all those questions and explained all the material to [him]." Defendant acknowledged that he had answered the questions honestly. The court asked additional questions to assure defendant was voluntarily pleading guilty. The court also had defense counsel acknowledge his satisfaction that defendant was pleading guilty voluntarily. The court determined defendant had freely and voluntarily entered into the plea.

The parties have not provided the sentencing transcript as part of the appellate record. They have provided the New Jersey Judiciary Plea Form. The questions and answers include the following:

> 17.    a.    Are you a citizen of the United States?
>                         (Yes)         [No]
>
>     If you answered "No" to this question, you must
> answer questions 17b-17f. If you have answered "Yes"
> to this question, proceed to Question 18.

b.     Do you understand that if you are not a citizen of the United States, this guilty plea may result in your removal from the United States and/or stop you from being able to legally enter or re-enter the United States?                                          [Yes]     [No]

c.     Do you understand that you have the right to seek individualized advice from an attorney about the effect your guilty plea will have on your immigration status?                              [Yes]     [No]

d.     Have you discussed with an attorney the potential immigration consequences of your plea?  If the answer is "No," proceed to question 17e.  If the answer is "Yes," proceed to question 17f.
                                                        [Yes]     [No]

e.     Would you like the opportunity to do so?
                                                        [Yes]     [No]

f.     Having been advised of the possible immigration consequences and of your right to seek individualized legal advice on your immigration consequences, do you still with to plead guilty?
                                                        [Yes]     [No]

During the plea proceeding, no one discussed defendant's citizenship, the immigration consequences of his plea, or his apparent inconsistent answers to question seventeen's subparts (d) and (e).  No one noted that defendant had circled "Yes" to the question that asked if he would like the opportunity to discuss the potential immigration consequences of his plea with an attorney. Nor did anyone attempt to determine if defendant could read English.

A-5176-17T4

According to the Judgment of Conviction (JOC), on April 24, 2014, the Judge sentenced defendant on the bail jumping offense to imprisonment for three years. The JOC states that this sentence is "concurrent with Bergen County 11-02-234-I and consecutive to 10-04-747-I." No one has explained the inconsistency between what the plea judge told defendant about concurrent sentences and the consecutive sentence documented on the JOC.

### B.

In December 2017, defendant filed a PCR petition. He explained that he was a native of the Dominican Republic, not a United States citizen, and his attorney never inquired about his immigration status or advised him about the immigration consequences of pleading guilty to the bail jumping charge. Defendant later learned that bail jumping is considered an aggravated felony under federal law, and a conviction subjects a defendant to mandatory deportation. Defendant claimed that had he known this, he would not have pled guilty.

Defendant also alleged that he met with his public defender once, the day of the plea hearing. With the exception of their discussions that day, defendant had no communications with his attorney. He explained that his family, out of concern about the "quality of [his] public defender," hired another attorney. He

alleged that though he asked the trial judge to adjourn the hearing so that his private attorney could appear, his request was ignored and his public defender made no effort to argue a motion for an adjournment and substitution of counsel.

The judge who heard defendant's PCR petition – not the judge before whom defendant entered his plea – denied it. The PCR judge concluded defendant was not coerced into pleading guilty, was not deprived of the right to counsel of his choice, and would not have declined to plead guilty had the immigration consequences of his plea been explained to him. The judge filed a memorializing order from which defendant appealed.

## II.

## A.

On appeal, defendant argues:

> POINT I: THE PCR COURT ERRED WHEN IT FOUND PETITIONER KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY ENTERED A GUILTY PLEA TO BAIL JUMPING.
>
> POINT II: THE PCR COURT WAS WRONG WHEN IT HELD PETITIONER WAS NOT DENIED HIS RIGHT TO HIS COUNSEL OF CHOICE.
>
> POINT III: THE PCR COURT ERRED WHEN IT HELD PETITIONER HAD RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL.

(1) Defense counsel failed to inform Petitioner that he faced mandatory deportation by entering a guilty plea to third degree bail jumping.

(2) Defense counsel failed to recuse himself when Petitioner indicated he had retained private counsel to represent him on the bail jumping charge.

(3) Defense counsel failed to ask the trial judge to inquire whether Petitioner wished to exercise his right to counsel of choice.

(4) Trial counsel failed to object when the trial judge effectively coerced Petitioner to waive his right to counsel of choice and enter a guilty plea.

(5) Defense counsel's cumulative errors denied Petitioner his right to effective assistance of counsel as guaranteed by the Sixth Amendment.

POINT IV: AS THERE ARE GENUINE ISSUES OF MATERIAL FACTS IN DISPUTE, AN EVIDENTIARY HEARING WAS REQUIRED.

When we review an order denying a PCR petition in a case where the Law Division judge has denied defendant an evidentiary hearing, and no issues turn on credibility, our review is de novo. See State v. Harris, 181 N.J. 391, 421 (2004); see also State v. Hyland, ___ N.J. ___, ___ (2019) (slip op. at 9) ("Our analysis requires that we apply the law, as we understand it, and afford no

special deference to the trial court's interpretation of the law or the legal consequences that flow from established facts.") (citing State v. Miles, 229 N.J. 83, 90 (2017)).

To establish a claim that trial counsel was constitutionally ineffective, a defendant must establish two elements. First, a defendant must show that "counsel's performance was deficient," that is, "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984); accord State v. Fritz, 105 N.J. 42, 52 (1987). Second, a defendant must establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Fritz, 105 N.J. at 60-61 (quoting Strickland, 366 U.S. at 694). To set aside a guilty plea based on ineffective assistance of counsel, a defendant must establish under Strickland's second prong "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial." State v. DiFrisco, 137 N.J. 434, 457 (1994) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

B.

Defendants are entitled to an evidentiary hearing if they establish a prima facie case in support of post-conviction relief, the court determines there are material issues of disputed fact that cannot be resolved by reference to the existing record, and the court determines that an evidentiary hearing is necessary to resolve the claims for relief. R. 3:22-10(b). To establish a prima facie claim of ineffective assistance of counsel, a defendant must demonstrate the reasonable likelihood of succeeding under the Strickland-Fritz test. See State v. Preciose, 129 N.J. 451, 463 (1992). "As in a summary judgment motion, the motion judge should view the facts in the light most favorable to a defendant to determine whether a defendant has established a prima facie claim." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). If a defendant has presented a prima facie claim and the facts supporting the claim are outside of the trial record, the trial court should ordinarily grant an evidentiary hearing to resolve the claim. Ibid.

In the case before us, defendant first contends his plea counsel was ineffective for allowing him to be coerced into pleading guilty. He argues he was coerced by the trial judge's "outbursts," the judge's arbitrary moving of the plea cutoff date to prevent him from speaking to counsel of his choice, and the assistant public defender's failure to advise him of the deportation consequences

of his plea. Our evaluation of these arguments is guided by the following legal principles.

"For a plea to be knowing, intelligent and voluntary, the defendant must understand the nature of the charge and the consequences of the plea." State v. Johnson, 182 N.J. 232, 236 (2005). In State v. Slater, 198 N.J. 145 (2009), the Court explained the factors trial courts must balance in exercising their discretion to grant defendants' motions to withdraw guilty pleas. Id. at 157-58. The Court later explained, however, "when the issue is solely whether an adequate factual basis supports a guilty plea, a Slater analysis is unnecessary." State v. Tate, 220 N.J. 393, 404-05 (2015) (citing State v. Campfield, 213 N.J. 218, 230-32, 235-37 (2013)). We perceive no legally significant difference between a plea entered without a factual basis, and a plea entered unknowingly or involuntarily. See R. 3:9-2; State v. Lipa, 219 N.J. 323, 331 (2014). Because defendant claims he unknowingly and involuntarily entered his plea, we must first address this threshold issue. An analysis under Slater is unnecessary. See Tate, 220 N.J. at 404.

"Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" Padilla v. Kentucky, 559 U.S. 356, 364 (2010) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).

Considering that "changes to our immigration law have dramatically raised the stakes of a noncitizen's criminal conviction[,] [t]he importance of accurate legal advice for noncitizens accused of crimes has never been more important." Ibid. It is now settled that an attorney provides a defendant with ineffective assistance if the attorney does not advise the client of the potential deportation consequences of pleading guilty. Id. at 371; State v. Gaitan 209 N.J. 339, 346 (2012).

Defendants are not only entitled to competent counsel, they are, in general, entitled to counsel of their choice. "The United States Supreme Court has recognized a defendant's Sixth Amendment right to 'a fair opportunity to secure counsel of his own choice.'" State v. Miller, 216 N.J. 40, 62 (2013) (quoting Powell v. Alabama, 287 U.S. 45, 53 (1932)). "'Deprivation of the right is "complete" when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received.'" Ibid. (quoting United States v. Gonzalez-Lopez, 548 U.S. 140, 148 (2006)).

Applying the foregoing principles to the case before us, we conclude defendant's guilty plea was not made knowingly and voluntarily. Following preliminary discussions during the proceeding that culminated in defendant's

plea, the judge announced that defendant had "today and today only to get a concurrent. If he doesn't take the offer today, it's consecutive." The judge's comment could have been intended for no other purpose than to induce defendant to plead guilty before the proceeding's end. The inducement appeared to be effective. After assuring defendant that "everything is going to be concurrent," defense counsel said "[w]e'll do it now."

Following a recess, defense counsel confirmed the State's recommendation was "three years consecutive to his open sentence," but "the court has recommended that [only] if [defendant] enters his plea to bail jumping today." Defense counsel further confirmed that the "flat three" on the bail jumping offense would be concurrent to both the open weapons charge and the sentence defendant was serving. However, when defendant informed the court "they're not giving me the option to be able to come tomorrow to hire a private attorney," the court responded: "Sure we will. I'll tell you what, no plea. Go to trial. Get you the consecutive term. Take him away."

Perhaps the judge's remark, removed from the context of the ensuing colloquy, could be interpreted as merely informing defendant of the consequences of a delay in proceedings. During the ensuing colloquy, however, the judge decided to arbitrarily designate the day of the proceeding as the plea

cutoff date. The judge did not explain his reason for doing so, even though defendant agreed to have his private attorney appear three days later – four days before the day the court had initially determined to "[p]ut him down for a plea cutoff."

When defendant interjected that he had a private attorney who would appear on Thursday, the court said that was fine and directed that defendant be remanded to county jail until Thursday. However, when the assistant public defender disclosed he could not be available on Thursday the judge decided to "[d]o the plea cutoff papers now." After the assistant prosecutor acknowledged he was unaware of whether discovery had been complete, defense counsel protested that "I really have not had a great deal of time to - - ." He didn't finish his sentence because the judge cut him off and commented on the uncomplicated nature of the bail jumping offense. The judge then said though he was willing to run the sentence concurrent, defendant was not happy with it, so he could go to trial and "it will be five to ten consecutive. Okay? That's what he wants, that's what he gets."

The judge did not couch his remarks in explanatory terms; rather, he declared what the sentence would be if defendant went to trial. The judge was, of course, incorrect in suggesting that a trial and five to ten year consecutive

sentence was what defendant wanted. What defendant wanted was advice from counsel of his choice. It is difficult to discern any reason for the judge's comments other than to coerce defendant into foregoing the right to counsel of his choice and pleading guilty immediately. Such "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel." State v. Martinez, 440 N.J. Super. 537, 544 (App. Div. 2015) (citations omitted). That is what happened here.

The prejudice to defendant was exacerbated by the absence of any discussion about the deportation consequences of his plea. Assuming either that defendant could speak English and read the plea forms, or that his attorney read him the subparts of question seventeen on the plea form, the form contained an ambiguity that no one corrected or addressed: defendant's answer that he would like the opportunity to discuss the immigration consequences of his plea with an attorney.

True, another recess was taken after which defendant entered a plea and said he was doing so voluntarily, as confirmed by his counsel. But no one asked him if he had reconsidered his constitutional right to counsel of his choice, no one attempted to clarify his statement on the plea form that he wanted the

20

opportunity to speak with an attorney about the immigration consequences of his plea, and no one disabused him of the notion that the judge would sentence him to "five to ten consecutive" if he exercised his right to consult with counsel of his choice. Moreover, the appellate record includes no explanation of the discrepancy between the inducement for defendant to enter a plea immediately – a three year term concurrent to the three years he would serve on each of the two weapons offenses, which would also be concurrent – and the judgment of conviction, which states "this three year term for bail jumping is consecutive to" the three year term imposed on the weapons offense for which he had not been sentenced at the time of his plea.

Reviewing the record in the light most favorable to defendant, Cummings, 321 N.J. Super. at 170, defendant has established a prima facie claim. Generally, when a defendant has established a prima facie case of ineffective assistance because counsel has not informed him of the immigration consequences of a plea, and a hearing is necessary to determine the second Strickland prong, namely, whether defendant would have rejected the plea, a remand for a hearing is necessary. There are, however, "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." Miller, 216 N.J. at 58. We find this to be such a

case of self-evident prejudice. The record discloses defendant was coerced into pleading guilty and deprived not only of his right to consult with counsel about the immigration consequences of his plea, but also of the right to counsel of his choice. For these reasons, we vacate the plea to the bail jumping offense and remand the matter for further proceedings.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5176-17T4