**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0029-18T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

HOWARD J. ALTMAN,

     Defendant-Appellant.

_____

Submitted December 11, 2019 – Decided February 5, 2020

Before Judges Koblitz and Whipple.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 15-06-1197.

Joseph E. Krakora, Public Defender, attorney for appellant (Monique D. Moyse, Designated Counsel, on the brief).

Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (Samuel J. Marzarella, Chief Appellate Attorney, of counsel; Cheryl L. Hammel, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Howard Altman appeals from the denial of his post-conviction relief (PCR) without an evidentiary hearing. We affirm primarily for the reasons explained by Judge Guy P. Ryan in his thorough written decision of July 9, 2018.

Defendant raises the following issues on appeal:

> POINT I: [DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIM THAT HIS ATTORNEY RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO COMMUNICATE, CONSULT, REVIEW DISCOVERY, OR INVESTIGATE, ALL OF WHICH LED TO HER INADEQUATE REPRESENTATION DURING THE PRETRIAL SUPPRESSION HEARING AND PLEA NEGOTIATIONS, AND FOR FAILING TO ARGUE ADEQUATELY AT SENTENCING.

Defendant was indicted for two separate incidents. The first was a theft that occurred on April 2, 2015, where defendant, in his capacity as a real estate professional, inserted his own name and deposited into his personal bank account a blank check for $1000 that was to go into a trust account. The second was a bank robbery on April 8, 2015.

Three witnesses to the bank robbery — the bank manager, a teller, and another bank employee — gave nearly identical statements to the responding detective about what they saw. All three statements asserted the bank teller yelled out to her co-workers, the defendant was holding a gun and demanded

2

money, and when defendant left, the bank manager yelled out the license plate number of defendant's vehicle and a bank employee wrote it down. A bank protective services manager was able to view the bank surveillance video from her Pennsylvania office. She told police there were images of defendant not wearing a mask on the video, that he had dark brown hair, was wearing light blue pants, dark sneakers, and a sweatshirt with writing on it.

Defendant's car was later stopped and defendant was arrested. A search of the car pursuant to a search warrant recovered $6,650 in cash, a black wool hat, a gray zip-up hooded sweatshirt with writing that matched the writing in the surveillance video, gray sweatpants, drug paraphernalia, and a .38 caliber special lead round. After his arrest, defendant was brought to the police station and interviewed by a detective; the interview was videotaped. Defendant was advised of his Miranda[1] rights, waived them, agreed to speak with the detective, and confessed.

Defendant was first indicted for third-degree theft for the misappropriated check. Defendant was later indicted on the first-degree robbery count. Defendant's total exposure for both charges was twenty-five years in prison and over $200,000 in fines.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-0029-18T2

The State sought to have defendant's videotaped confession admitted at trial. The trial judge conducted a hearing and found the <u>Miranda</u> warnings were properly given, and that defendant did waive those rights. The trial judge further found the waiver "was knowing, intelligent, and voluntary in light of the totality of the circumstances." The judge noted despite defendant's statements about wanting to take his own life, his drug use, and being in a low point, there was no indication either by the detective or by the trial judge's own observations of the videotape that defendant was under the influence; there was not "swaying or slurring his words," nor "sweating, wavering or slumping down in the chair, nothing like that." The trial judge found defendant was "candid and cooperative as acknowledged by the officer." The videotaped statement was found admissible.

Right before trial was scheduled to start, defendant pled guilty to the charges under indictments 15-05-1080, third-degree theft, and 15-06-1197, first-degree robbery, a first-degree crime to be sentenced in the second-degree range, with the State agreeing to recommend a sentence of eight years subject to the No Early Release Act (NERA), N.J.S.A. 2C: 43-7.2. Defendant was also to pay restitution, as written on the plea form. The trial judge asked if defendant understood the plea offer, and verified that defendant understood he

could have a trial in this matter. In fact, the matter was scheduled for trial. And at trial it would be the State's burden to prove you guilty beyond a reasonable doubt on both of these matters. That you would have an opportunity to have [defense counsel] cross-examine the State's witnesses or present witnesses of your own. You could take the stand on your own behalf or remain silent. But by entering into this agreement, you're giving up all those rights.

To which defendant responded "I fully understand, yes." The trial judge went on to ask defendant if anyone was forcing him, threatening him or offering him anything to enter into the plea, to which defendant responded in the negative, and stated he was entering into the plea voluntarily.

Defendant testified defense counsel answered all his questions; he was satisfied with her representation; defense counsel went over the plea form with him; and the circled answers, the initials on the bottom of each page, and the signature on the last page were his. The trial judge confirmed defendant understood and that he signed the NERA supplemental plea form. When asked, defendant stated he did not have any questions about the plea offer.

Defense counsel laid the factual basis for the plea for both the third-degree theft as well as the robbery. As to the robbery, defense counsel and defendant engaged in the following colloquy:

[DEFENSE COUNSEL]: And you put [the teller] in immediate fear of bodily injury by exhibiting or by

5

giving her the impression that you had a gun. Is that right?

[Defendant]:     Yes, ma'am.

. . . .

[Defense Counsel]:     And the gun, more specifically, the weapon, more specifically, was a handgun. Is that right?

[Defendant]:     Yes, ma'am.

The State then clarified that defendant exhibited a gun to the teller to put her in fear of bodily injury in order to facilitate the theft, all to which defendant agreed. The trial judge accepted the plea.

At sentencing, defense counsel stated she went over the presentence report and the sentencing memo with defendant. The trial judge had read the sentencing memo as well as letters in support from family members and friends, and asked if there were "any additions, corrections or clarifications to be made." Defense counsel argued for mitigating factor seven, and asked the trial judge to consider the character and attitude of defendant based on the letters and defendant's family's presence at sentencing and asked the trial judge to consider a sentence of six years subject to NERA due to defendant's lack of a prior record and his character and attitude. Defense counsel pointed out that defendant was a trustee at the jail, and again noted how defendant's family had not abandoned

6

him as they were present in court. The trial judge then gave defendant an opportunity to speak on his own behalf.

After considering "the presentence report, the victim impact statements, as well as the memo that was prepared by defense counsel, and the letters that were . . . sent from family members and friends," the trial judge found aggravating factors three, the risk defendant will commit another offense, and nine, the need to deter defendant and others from violating the law. The trial judge found mitigating factor six, defendant has compensated or will compensate the victim for the damage sustained or would do community service, but gave it moderate weight because of the impact statements that "describe the lasting effects of the fear of having a gun pointed in their face . . . and those are the type of things that this emotional damage that they have suffered can't be compensated by a dollar amount. . . ." The trial judge also found mitigating factor seven, defendant does not have a history of criminal activity, and ten, defendant is particularly likely to respond affirmatively to probationary treatment.

The trial judge found the mitigating factors substantially outweighed the aggravating factors and sentenced defendant in accordance with the plea recommendation to eight years of imprisonment for, first-degree robbery,

7

subject to NERA, to be served concurrently with the third-degree theft sentence of three years flat.

Defendant filed no direct appeal but petitioned for PCR, regarding only the robbery conviction on October 11, 2017. PCR counsel argued that defense counsel's lack of communication and failure to review discovery fully with defendant deprived defendant from having an active role in his criminal defense. PCR counsel also argued that while defense counsel did submit character letters, her lack of client contact prohibited a "more personal argument that may have been effective towards the [c]ourt to possibly secure a more favorable sentence."

Defendant himself asserted that he was to "elocute to the fact that I had a firearm as part of my plea, which I was adamant with [defense counsel] that I did not want to do . . . [t]here was no weapon or mask recovered ever." Defendant alleged that defense counsel told him "the [State] would only agree to give me the six with the [eighty-five] if [defendant] did elocute to the fact that [he] had a firearm," and that he "would never have agreed to do it in the first place" if it were not for the allegedly-promised six years. Defendant also asserted that defense counsel "told [his] family" the judge was amenable to a six-year sentence, and that she "misled my son and my sister" that six years was the recommended sentence.

Defendant contended that while he willfully gave his statement, he was under the influence and suicidal, and defense counsel "refused to bring up those issues to the arresting officer." Defendant alleged that if defense counsel had "actually even tried" to suppress his statement, it might have been suppressed and the State's evidence against him might not have been as strong.

Defendant stated that he had around fifteen character reference letters written for him but realized when he got his copy of the sentencing report that there were two missing – one from his wife of twenty-two years and one from a real estate associate. He felt it was "very important to the fact that when [the trial judge] sentenced me to the eight years with [eighty-five], that [the trial judge] took that into account." Defendant also believed that the trial judge's impression that he had spent some of the money from the bank was "held against [him]" in that it "also might have influenced [the trial judge's] decision" to not give him a six-year sentence.

In a written decision, Judge Ryan denied defendant's PCR petition because it failed on both prongs of Strickland v. Washington, 466 U.S. 668 (1984), and therefore did not establish a prima facie case of ineffective assistance of counsel. The PCR judge paid particular attention to the record finding defendant received "a very favorable plea." The PCR judge indicated defendant received effective

A-0029-18T2

assistance as defendant's total exposure was twenty-five years, but he was instead sentenced to eight years for the robbery, concurrent to the second sentence for theft, even though they were separate crimes against different victims on different dates, "clearly expos[ing] [defendant] to the possibility, if not likelihood, of consecutive sentences. State v. Yarborough, 100 N.J. 627, 643-44 (1985)." Judge Ryan found defendant's claims of ineffective assistance were bald assertions unsupported by the record, and defendant provided no proof of any facts an investigation might have discovered, did not submit certifications by anyone demonstrating information that could have been discovered, or even provide names of anyone able to provide testimony favorable to him. The PCR judge found defendant's allegation, that he was unable to participate in his own defense because defense counsel neglected to review discovery with him, was unsupported by the record as defendant had multiple opportunities – through the colloquy, through the plea form, and through the two times he addressed the court – to indicate he was dissatisfied, but did not.

Judge Ryan reviewed the "contemporaneous transcripts of the plea and sentence" and rejected defendant's "newly-minted dissatisfaction with his attorney." The PCR judge noted defense counsel "zealously pursued

suppressing [defendant's] incriminating statement . . . and the trial was scheduled to begin at the time [defendant] pled guilty."

The PCR judge also considered and rejected four additional allegations defendant raised to indicate defense counsel was ineffective: 1) he had never used a gun or had a mask during the robbery; 2) defense counsel promised him the trial judge would sentence him to six years; 3) defense counsel should have raised his mental state during the Miranda hearing to suppress his confession; and 4) defense counsel failed to submit character letters from his wife and from his real estate colleague. The PCR judge found defendant's denial of possession of a gun was contradicted by defendant's sworn testimony at the plea hearing, where he admitted to possessing a handgun three times. The PCR judge held defendant could not overcome his sworn admissions by "naked, post-hoc denials. State v. Simon, 161 N.J. [416], 444 [(1999)]." The PCR judge noted that if defendant believed there was no factual basis for his plea, he was obligated to challenge it on direct appeal under State v. Tate, 220 N.J. 393, 404-05 (2015). As to defendant's claim of a promise of a six-year sentence instead of eight, the PCR judge found there was nothing in the record to show anyone suggested the plea was for a six-year sentence, the eight-year sentence was clearly set forth in the plea form, the trial judge reviewed it with defendant, and

that "[n]otably, despite not reserving the right to do so in the plea form, [defense counsel] did ask the judge to sentence [defendant] to [six years NERA]. Thus, she was effective in seeking less time than what was called for in the plea agreement."

As to defendant's allegations his defense counsel did not argue that his mental state prevented him from knowingly, voluntarily, and intelligently waiving his Miranda rights, the PCR judge found defense counsel "vigorously cross-examined" the detective as to defendant's mental state during his interview and "specifically argued for suppression of the confession due to defendant's suicidal thoughts, distress, and drug addiction." The PCR judge noted that defendant waived his right to appeal the denial of the Miranda motion when he pled guilty, but, regardless, "defense counsel made the specific arguments [defendant] claims she failed to raise. From this court's review of the record, counsel's cross-examination and summation were zealous, pointed and effective. That the judge rejected the argument does not render counsel's performance deficient." The PCR judge also found that the failure of defense counsel to submit character letters from defendant's wife and business associate was "of no moment," as defendant did not submit copies of those letters, making it nothing more than a bald assertion. The PCR judge noted that defense counsel did

12

submit numerous other letters and "argued vehemently" for defendant's good character, and that even the State conceded defendant had support from his "entire family," so any omission would not have changed the resulting sentence.

Thus, the PCR judge found defendant did not meet either prong of the Strickland/Fritz[2] test. The PCR judge found defendant failed prong one, as defense counsel was effective in securing a favorable result for defendant, a shorter sentence than his exposure for the crime to which he pled guilty and substantially shorter than what he faced if convicted at trial. The PCR judge found defendant failed prong two in that he did not show he would not have pled guilty but for counsel's alleged errors, as required under State v. Gaitan, 209 N.J. 339, 351 (2012). Rather, the PCR judge noted that trial was about to begin either that day or the next, that defendant voluntarily waived his right to trial, and offered no evidence to support a conclusion he would not have accepted the plea and insisted on going to trial.

As to defendant's request for an evidentiary hearing, the PCR judge denied it finding the "bald assertions" made by defendant did not present a prima facie

---

[2] Strickland, 466 U.S. at 693- 94; see also State v. Fritz, 105 N.J. 42, 60-61 (1987) (adopting Strickland standard).

case, and that an evidentiary hearing would not result in a showing the outcome would have been different or better had defendant gone to trial.

Where a judge denies a PCR petition without an evidentiary hearing, we review the denial for abuse of discretion. State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013). However, where no evidentiary hearing was conducted, "we may review the factual inferences the court has drawn from the documentary record de novo." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016). "We also review de novo the [trial] court's conclusions of law." Ibid. (citation omitted).

PCR is "New Jersey's analogue to the federal writ of habeas corpus." State v. Cummings, 321 N.J. Super. 154, 164 (App. Div. 1999) (first citing State v. Afanador, 151 N.J. 41, 49 (1997); and then citing State v. Preciose, 129 N.J. 451, 459 (1992)). A PCR claim "must be established by a preponderance of the credible evidence." State v. McQuaid, 147 N.J. 464, 483 (1997) (citing Preciose, 129 N.J. at 459). Rule 3:22-2(a) states that PCR is cognizable if based upon a "[s]ubstantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey." The Sixth Amendment of the United States Constitution and article one, paragraph ten of the New Jersey Constitution both guarantee

effective assistance of legal defense counsel to a person accused of a crime. See State v. Porter, 216 N.J. 343, 352 (2013) (citing Strickland, 466 U.S. at 685-86 (1984)).

In determining whether a defendant has established a prima facie claim, the facts should be viewed in the light most favorable to the defendant. Preciose, 129 N.J. at 462-63. To determine whether a prima facie claim of ineffective assistance of counsel is present, the claim must be evaluated under the two-prong Strickland test, where "a reviewing court must determine: (1) whether counsel's performance 'fell below an objective standard of reasonableness,' and if so, (2) whether there exists a 'reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.'" State v. Castagna, 187 N.J. 293, 313-14 (2006) (quoting Strickland, 466 U.S. at 688, 693- 94); see also State v. Fritz, 105 N.J. 42, 60-61 (1987). However, to establish a prima facie claim, a defendant "must do more than make bald assertions that he was denied the effective assistance of counsel." Cummings, 321 N.J. Super. at 170. Rather, a defendant "must allege facts sufficient to demonstrate counsel's alleged substandard performance. Thus, when a [defendant] claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by

affidavits or certifications based upon the personal knowledge" of the person making the certification or affidavit. Ibid.

Here, there was a videotaped confession, deemed admissible at trial after a thorough Miranda hearing, where defendant admitted to putting on a mask and possessing a gun. Although defendant asserted the gun was not real, he acknowledged he was "sure [the teller] was scared . . . I'd be scared if somebody came in with a gun." There were three witnesses with nearly identical statements describing defendant, the gun, and the defendant's getaway car and license plate number. There was also video surveillance showing defendant's face without a mask just before he entered the bank, and the money as well as the other incriminating items were recovered from defendant's car, which matched the description and license plate numbers observed by the witnesses. Trial was about to start, and the trial judge clearly and thoroughly informed defendant of the rights he was waiving by pleading guilty, including cross-examining the witnesses, presenting his own witnesses, and taking the stand on his own or remaining silent. Defendant responded that he "fully underst[ood], yes."

Given defendant's understanding of the rights he gave up, as well as the mountain of evidence against him, including his videotaped detailed confession, it is unlikely that defendant would have insisted on going to trial because he was

16

not guaranteed a six year sentence subject to NERA, where he faced a total of twenty-five years and an over $200,000 fine, and was offered a maximum of an eight-year sentence subject to NERA. Defendant also incorrectly asserts counsel failed to tell the court he had already made restitution, and that this as well as the other alleged failures, reflected in the transcripts, led to a higher sentence than defendant would have received had counsel communicated this information to the court.

Looking at the facts in the light most favorable to defendant, there is no evidence defendant would have insisted on going to trial but for defense counsel's advice, and it would not have been rational for him to do so. Therefore, defendant has not met prong two of the Strickland/Fritz test.

Moreover, defendant's bald assertions, as the PCR judge noted, did not present a prima facie case as required for an evidentiary hearing. Further, defendant's allegations are vague and speculative, and an evidentiary hearing would not "aid the court's analysis" of whether defendant is entitled to PCR. Therefore, an evidentiary hearing was not warranted and there was no abuse of the PCR judge's discretion. Defendant's other arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17

A-0029-18T2